IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES LAMAR,

                          Petitioner,

      v.

LIZZIE TEGELS,

                          Respondent.

OPINION & ORDER

12-cv-697-jdp

---

      Petitioner Charles Lamar is in the custody of the Wisconsin Department of Corrections at the Jackson Correctional Institution, located in Black River Falls, Wisconsin. Petitioner was originally given concurrent sentences on one count of aggravated battery and one count of bail jumping, but after he was allowed to withdraw his plea on the aggravated battery count and come to a new plea agreement on that charge, his new, maximum sentence for aggravated battery was ordered to be served consecutively to the bail jumping sentence. His request for sentence credit on the aggravated battery charge for some of the time he spent serving the original, concurrent sentences was denied.

      Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that the state court violated the Double Jeopardy Clause in two ways: (1) by failing to give him sentence credit on the aggravated battery charge for prison time already served on his original, concurrent sentence; and (2) by sentencing him to more than the maximum punishment allowed under the Wisconsin statutes. In my previous order, I stated that petitioner did not explicitly raise in his state court appeals the issue of his sentence exceeding the maximum allowable punishment, and I directed the parties to submit supplemental briefing on the question whether petitioner properly exhausted that claim.

After considering the parties' briefs and supplemental materials, I conclude that petitioner has exhausted his second claim, but I will deny the habeas petition on the merits because petitioner fails to show that the Wisconsin Supreme Court unreasonably applied clearly established double jeopardy law in denying petitioner's appeal of his conviction.

The following facts are drawn from the petition and state court records.

FACTS

Petitioner challenges the conviction and sentence that he received in Milwaukee County case no. 06CF1688. Petitioner was originally charged in that case with one count of felony aggravated battery and two counts of misdemeanor bail jumping, all as a habitual offender, for beating his girlfriend. Pursuant to a plea agreement, petitioner pleaded guilty to the aggravated battery charge and one count of misdemeanor bail jumping, both as a habitual offender. On September 15, 2006, Judge Jeffrey A. Conen accepted petitioner's guilty plea and sentenced him to 12 years of initial confinement and five years of extended supervision on the aggravated battery count and one year of initial confinement and one year of extended supervision on the bail jumping count. The sentences were made concurrent with each other and petitioner was granted 177 days of credit (from March 23, 2006—the date of his arrest—to September 15, 2006). Pursuant to the plea agreement, the second count of misdemeanor bail jumping was dismissed.

On March 23, 2007, petitioner completed the initial confinement portion of the bail-jumping charge. In July 2007, petitioner filed a motion to withdraw his plea on the aggravated battery charge, arguing that the court erroneously informed petitioner that the maximum penalty for aggravated battery as a habitual offender was 19 years rather than 21

years. On August 29, 2007, Judge Conen granted the motion. He also reinstated the second, earlier-dismissed, count of bail jumping as a habitual offender.

After further negotiation, petitioner and the state entered into a new plea agreement, under which petitioner pleaded guilty to aggravated battery and the second bail jumping charge (this time, neither of the charges carried the habitual offender enhancement). After taking the plea on November 6, 2007, Judge Conen recused himself and the matter was assigned to Judge Clare Fiorenza for resentencing. On January 3, 2008, Judge Fiorenza sentenced petitioner to ten years of initial confinement and five years of extended supervision on the aggravated battery charge, and nine months of confinement on the bail jumping charge. The fifteen-year sentence on the aggravated battery charge was the maximum allowable under Wisconsin law.[1] These sentences were to be served concurrently to each other but consecutive to the sentence for the first bail jumping charge. Judge Fiorenza granted petitioner 306 days of sentence credit for time spent in confinement between the March 23, 2007 end of initial confinement on the first bail jumping charge and the January 3, 2008 resentencing.[2]

In July 2008, petitioner filed a motion seeking additional sentence credit for time served on the original aggravated battery as a habitual offender charge—the 189-day period from September 15, 2006 (the date of his original sentencing) to March 23, 2007. Judge

---

[1] Petitioner's aggravated battery conviction pursuant to Wis. Stat. § 940.19(5) is a Class E felony carrying a maximum penalty of "a fine not to exceed $50,000 or imprisonment not to exceed 15 years, or both." *See* Wis. Stat. § 939.50(3)(e); *see also* Dkt. 6-1 (petitioner's amended judgment of conviction).

[2] As the Wisconsin Supreme Court points out, the circuit court erred in granting 306 days of sentence credit for this time period, which was only 286 days. However, this miscalculation is irrelevant to the issues in this case.

Fiorenza denied that motion, stating that the lack of credit for this time was proper under Wisconsin sentencing law. Petitioner appealed, arguing that the denial of credit violated both Wisconsin law and the Double Jeopardy Clause. On August 11, 2009, the Wisconsin Court of Appeals affirmed the circuit court's decision. Petitioner's appeal to the Wisconsin Supreme Court was denied in a June 29, 2011, opinion.

The Supreme Court first considered wither petitioner was entitled to sentence credit pursuant to Wis. Stat. §§ 973.04 ("Credit for imprisonment under earlier sentence for the same crime")[3] and 973.155 ("Sentence credit").[4] The court stated that that both statutes applied to petitioner's case, and concluded that petitioner was not entitled to sentence credit on the aggravated battery charge because he was not entitled to "dual credit" on his amended, consecutive sentence.

The Supreme Court then addressed petitioner's double jeopardy claim:

> The guarantee against double jeopardy encompasses three separate constitutional protections. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id*. at 717, 89 S.Ct. 2072. Lamar contends that under this last protection—the protection against multiple punishments for the same offense—he is constitutionally entitled to the 189 days of additional sentence credit at issue in this case.
>
> In *Pearce*, the United States Supreme Court cited the landmark case of *Ex parte Lange*, 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872

---

[3] This statute states, "When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served."

[4] This statute allows for sentence credit "1. While the offender is awaiting trial; 2. While the offender is being tried; and 3. While the offender is awaiting imposition of sentence after trial."

(1873), for the principle that double jeopardy protections are undoubtedly "violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense." 395 U.S. at 717–18, 89 S.Ct. 2072. Lamar argues that, if upheld, the rulings of the circuit court and court of appeals will be violating this venerable principle.

* * *

We are not persuaded by Lamar's argument. On January 3, 2008, the circuit court ordered that Lamar's Amended Count I sentence for aggravated battery be served consecutively to any other sentence. From September 15, 2006, to March 23, 2007—the time period for which Lamar is seeking additional sentence credit—Lamar was serving his Count I sentence and his Count II sentence for misdemeanor bail jumping as a habitual offender concurrently. Because the circuit court, during Lamar's second sentencing, ordered him to serve his sentences for Amended Count I, aggravated battery, and Amended Count III, misdemeanor bail jumping, consecutively to any other sentence, it would go against the order of the circuit court to credit Lamar with time he served before March 23, 2007 (the date Lamar completed his initial incarceration portion of his Count II sentence for misdemeanor bail jumping as a habitual offender).

This does not violate Lamar's constitutional protection against double jeopardy. In *State v. Amos*, 153 Wis. 2d 257, 450 N.W.2d 503 (Ct. App. 1989), the court of appeals faced a double jeopardy claim based on the trial court's revocation of its original award of 726 days of sentence credit. The court of appeals held that the elimination of sentence credit to which an offender is not statutorily entitled does not violate double jeopardy. 153 Wis. 2d at 281–82, 450 N.W.2d 503. The *Amos* court concluded that, "[I]n this case, the sentence was modified to eliminate . . . credit that [the defendant] was not entitled to." *Id*. at 282, 450 N.W.2d 503. Accordingly, double jeopardy was not implicated. *Id*.

Here, the circuit court, pursuant to Wis. Stat. §§ 973.04 and 973.155, properly denied Lamar's postconviction motion for additional sentence credit. Consequently, Lamar was not statutorily entitled to this additional sentence credit, and as the court of appeals held in *Amos*, we conclude that Lamar's protection against double jeopardy has not been violated.

5

> From September 15, 2006, to March 23, 2007, Lamar received credit for the sentence he was serving on Count II, misdemeanor bail jumping as a habitual offender. We hold that the constitutional guarantee against double jeopardy does not require that a defendant receive sentence credit for every day served against a sentence when (1) the vacated sentence was originally imposed concurrent to a separate sentence, (2) the separate sentence is not vacated, (3) the vacated sentence is reimposed consecutively to the non-vacated sentence, and (4) the time that the defendant requested was served in satisfaction of the sentence that was not vacated.

*State v. Lamar*, 2011 WI 50, ¶¶ 44-45, 47-50, 334 Wis. 2d 536, 799 N.W.2d 758. Petitioner then filed this habeas petition.

ANALYSIS

A. Exhaustion

Petitioner argues that his second sentence violated the Double Jeopardy Clause because he (1) did not receive sentence credit on the aggravated battery charge for prison time already served on his original, concurrent sentence; and (2) his total time punished on the aggravated battery charge (his initial time served combined with the second sentence) exceeded the maximum punishment allowed under the Wisconsin statutes. In the court's previous order, I stated that "my review of the state court record shows that petitioner appears to have raised only the first issue in [his state appeals]. He did not raise the issue of his sentence exceeding the maximum allowable punishment until his brief-in-chief in this habeas action." Dkt. 12 at 4. I directed the parties to submit supplemental briefing on the question of exhaustion.

To satisfy the doctrine of exhaustion, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requires the petitioner to "fairly present" his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001) (citing *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). To satisfy this requirement, the petitioner must have placed both the operative facts and the controlling legal principles before the state courts. *See Boyko*, 259 F.3d at 788 (citing *Rodriguez*, 193 F.3d at 916).

When applying these standards, federal courts should "avoid hypertechnicality and [instead] enforce the Supreme Court's mandate in light of its purpose—to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). "[A] petitioner may reformulate [his] claims as long as the substance of the claim remains the same." *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004).

This is a close question. Although petitioner does not explicitly discuss the maximum penalty issue in his Wisconsin Supreme Court briefing, that issue relies on the same core facts as his other double jeopardy claim, and he relies on the same cases—*Pearce* and *Lange*—for both of his theories. It also appears that the Wisconsin Supreme Court considered the maximum penalty issue, as then-Chief Justice Abrahamson noted the issue in her dissent. *Lamar*, 2011 WI 50, ¶ 54 n.1 (Abrahamson, C.J., dissenting).

I conclude that petitioner has exhausted his second claim. Ultimately, this decision is of little benefit to petitioner because, after reviewing the merits of his claims, I will deny his habeas petition.

**B. Review of the merits**

This court's authority to issue habeas corpus relief for persons in state custody is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"The petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011).

At points in his briefs, petitioner jumbles the "contrary to" and "unreasonable application" tests of § 2254(d)(1), for instance, arguing that "[t]he state court purported to recognize [the double jeopardy principles raised by petitioner], but nonetheless applied them unreasonably, resulting in a decision which is directly contrary to federal law as established by the Supreme Court." Dkt. 7 at 16 (citation omitted).[5] This distinction is important: this

---

[5] Petitioner also argues that the Wisconsin Supreme Court based its decision on an unreasonable determination of the facts when it concluded that petitioner "was not actually serving a sentence for aggravated battery during the time for which he now seeks credit." Dkt. 7 at 12. However, I do not understand the Wisconsin Supreme Court to be saying that petitioner literally was not serving time on the aggravated battery charge during the time in question; in its recitation of the facts, it stated, "The 189 days of additional sentence credit [petitioner] requested were the days during which he was serving time for Count I, aggravated battery as a habitual offender, and Count II, misdemeanor bail jumping as a habitual offender." *State v. Lamar*, 2011 WI 50, ¶ 13, 334 Wis. 2d 536, 799 N.W.2d 758.

court reviews a state court decision under the "contrary to" standard *de novo*, while it instead gives significant deference to a state court decision when it applies the "unreasonable application" standard. *U.S. ex rel. Bell v. Pierson*, 267 F.3d 544, 557 (7th Cir. 2001).

This court may issue a writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court opinions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

Given that it is undisputed that the Wisconsin Supreme Court identified the correct double jeopardy case law and that petitioner focuses his brief-in-chief on the "unreasonable application" standard (in his "Issue Presented" section, he asks "did the [Wisconsin Supreme Court] *unreasonably apply* the United States Supreme Court's decisions . . . ." Dkt. 7 at 1 (emphasis added)), I conclude that it is appropriate to use the "unreasonable application" standard in this case.[6] The relevant state court decision for this court's review is the

---

Rather I understand the court to be saying that vacation of the original sentence and later imposition of consecutive sentences allowed the second sentencing court to refuse to give petitioner "dual credit" for the time at issue. The court's interpretation of how vacation of the first sentence and imposition of the second sentence affected petitioner's right to sentence credit is a legal issue, not a factual one.

[6] In his reply brief, petitioner presents explicit arguments that the Wisconsin Supreme Court's decision was "contrary to" the holdings in *Pearce* and *Lange* by failing to apply the holdings of those cases and by arriving at a result different from *Pearce* even though the facts were indistinguishable. However, arguments not developed until a reply brief are waived. *See United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006). In any case, I am not persuaded that the Wisconsin Supreme Court's decision is contrary to *Pearce* or *Lange* because neither of those cases involved the dual-sentence issue presented here.

Wisconsin Supreme Court's decision. *Stevens v. McBride*, 489 F.3d 883, 902 n.2 (7th Cir. 2007) ("For purposes of our review . . . the operative state-court decision 'is that of the last state court to address the claim on the merits.'" (quoting *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006))).

This standard places a high burden on petitioner. *Metrish v. Lancaster*, 133 S.Ct. 1781, 1786 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). "[A]n 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id*. (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington*, 562 U.S. at 103).

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).[7] At issue in this case is the protection against

---

[7] The Double Jeopardy Clause "represents a fundamental ideal in our constitutional heritage,

10

multiple punishments, as petitioner argues that he deserved credit for 189 days of confinement following his first sentencing that was not applied to his second sentence.

The rule against multiple punishments in the context of sentence credit for a vacated first sentence is articulated in *Pearce*. In that case, one of the habeas petitioners[8] had his convictions set aside after he had already served two and one-half years of his sentence. When he was resentenced, he was not given credit for the time spent on the original sentence. The Court concluded,

> We think it is clear that this basic constitutional guarantee [against multiple punishments] is violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense. The constitutional violation is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction. Suppose, for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving three years in prison. If, upon reconviction, he is given a 10-year sentence, then, quite clearly, he will have received multiple punishments for the same offense. For he will have been compelled to serve separate prison terms of three years and 10 years, although the maximum single punishment for the offense is 10 years' imprisonment. Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed.
>
> We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed.

and [applies] to the States through the Fourteenth Amendment." *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

[8] *Pearce* combined the appeals of two habeas petitioners. 395 U.S. at 713-14.

*Pearce*, 395 U.S. at 718-19. In coming to this conclusion, the Court noted that it had "stated the controlling constitutional principle almost 100 years ago, in the landmark case of *Ex parte Lange* [85 U.S. 163 (1873)]." In that case, the lower court sentenced Lange to both one year of imprisonment *and* a $200 fine for stealing mail bags from the Post Office, under a statute that authorized a maximum sentence of one year of imprisonment *or* a fine not to exceed $200. The Court granted the habeas petition, stating:

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

*Lange*, 85 U.S. at 168.

In the present case, the Wisconsin Supreme Court identified *Pearce* and *Lange* as the relevant precedent, but concluded that petitioner was not entitled to credit for time he previously served on the same aggravated battery offense. Petitioner argues that the court applied the following two principles unreasonably:

> Through its decisions in *Lange* and *Pearce*, the United States Supreme Court has made it clear the Fifth Amendment guarantee against double jeopardy protects against multiple punishments for the same offense in two ways: 1) by ensuring that a sentencing court does not, through multiple sentences, exceed the punishment authorized by the legislature and, 2) by requiring that punishment already served be "credited" against a new sentence imposed for the same offense.

Dkt. 7 at 16.

However, petitioner does not provide much explanation for why the Wisconsin Supreme Court was objectively unreasonable, nor does he grapple with the ways the present case is different from *Pearce* or *Lange*. Under those cases, there is no question that if petitioner

had been convicted of only the aggravated battery charge, he would have to be credited all of the time spent serving the first, vacated sentence. But the circumstances of petitioner's convictions are more complicated. The most important of the differences is that unlike the petitioners in *Pearce* and *Lange*, petitioner's original sentence was for concurrent terms of punishment that were only partially vacated; his sentence on the aggravated battery charge was vacated but his sentence on the first bail jumping charge was not. The petitioner in *Pearce* would have received absolutely zero credit for his initial time in prison, whereas petitioner did receive credit for that time in one respect: it was credited toward his first bail jumping sentence. Similarly, the petitioner in *Lange* was punished twice for only one conviction. The total of those two convictions surpassed the maximum allowable penalty. There was no other charge to which to attribute part of those penalties. Unlike the present case, the *Pearce* and *Lange* courts were not faced with a "dual credit" question.

I understand the Wisconsin Supreme Court to have distinguished petitioner's case from *Pearce* and *Lange* because of these differences. Through its invocation of Wis. Stat. § 973.155 (a statute concerning *presentence* credit), *State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988) (a case about *presentence* credit), and *State v. Amos*, 153 Wis. 2d 257, 450 N.W.2d 503 (Ct. App. 1989) (a case in which the trial court *sua sponte* eliminated previously erroneously awarded *presentence* credit), it is clear that the court viewed petitioner's situation as more analogous to someone who serves presentence custody on several charges and is later given a consecutive sentence. That person would not be entitled, either by Wisconsin statute or the Double Jeopardy Clause, to be given separate credit on each consecutive sentence. Similarly, so long as that person receives credit for his pretrial detention against one of his

13

consecutive sentences, there is not a double jeopardy problem with receiving maximum penalties on the other consecutive sentences.

The mere fact that there is some difference between the facts of the present case and *Pearce* or *Lange* does not automatically make the Wisconsin Supreme Court's ruling reasonable:

> This is not to say that § 2254(d)(1) requires an "'identical factual pattern before a legal rule must be applied.'" To the contrary, state courts must reasonably apply the rules "squarely established" by this Court's holdings to the facts of each case. "[T]he difference between applying a rule and extending it is not always clear," but "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt."

*Woodall*, 134 S. Ct. at 1706 (citations omitted). On the other hand, a mistake in the Wisconsin Supreme Court's reasoning does not mean that the decision is objectively unreasonable. *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013) ("it is clear that a bad reason does not necessarily mean that the ultimate result was an unreasonable application of established doctrine. A state court could write that it rejected a defendant's claim because Tarot cards dictated that result, but its decision might nonetheless be a sound one"); *see also Brian R. Means*, *Federal Habeas Manual* § 3:70 (2015) ("Circuit courts are generally in agreement that § 2254(d)(1)'s 'unreasonable application' clause should be applied only to the *result* of a state decision; federal courts are not to scrutinize the *reasoning* applied by state courts in reaching their decisions." (emphasis in original)).

Thus, even though the Supreme Court's statement that "the elimination of sentence credit to which an offender is not statutorily entitled does not violate double jeopardy" is not always true—for instance, no state would be entitled to craft a statute that would have denied sentence credit to a petitioner in the exact same situation as the petitioner in *Pearce*—the real

question facing this court is whether the Wisconsin Supreme Court acted objectively unreasonably in distinguishing petitioner's situation from that of the petitioners in *Pearce* and *Lange*. The recent *Woodall* decision frames the question this way:

> The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question.

*Woodall*, 134 S. Ct. at 1706-07 (citations omitted).

I conclude that given the unique facts of this case, there is room for "fairminded disagreement" on the application of *Pearce* and *Lange*. Petitioner's argument is for an extremely literal reading of those cases. He argues "the defendant must be credited for all punishment served under the old sentence against the new. The rule is plainly to be applied to each offense individually, and not to an overall aggregate sentence" and that "[u]nder this rule it does not matter if the defendant is convicted of one or multiple offenses. The rule is simply applied to the sentence for each offense." Dkt. 9 at 6-8. But he does not cite any authority for that general proposition or to any cases in which *Pearce* or *Lange* has been applied to a situation directly comparable to that of petitioner's. My own research shows that the application of these cases is not as simple as petitioner makes it.

For instance, in *United States v. Rozier*, 485 F. App'x 352, 354 (11th Cir. 2012) *cert. denied*, 133 S. Ct. 1459 (2013), the petitioner was initially sentenced to two concurrent 20-year sentences for distributing cocaine and a concurrent life sentence for possession of a firearm by a convicted felon. After petitioner served "about 20 years" of the concurrent sentences, he successfully challenged the length of the life sentence on the firearm charge. *Id.* at 354, 358. Petitioner was resentenced to 20-year *consecutive* sentences on the cocaine charges and a 10-year *consecutive* sentence on the firearm charge. *Rozier*, 485 F. App'x at 354.

Considering the petitioner's habeas challenge for sentence credit on the time he had already served, the court concluded that using a "sentencing package" approach, the Double Jeopardy Clause was not violated by the new sentence even though petitioner did not receive separate sentence credit on each originally concurrent sentence. *Id.* at 358-59.

Another example is *Thacker v. Garrison*, 527 F.2d 1006, 1007 (4th Cir. 1975), in which the petitioner's conviction and sentence of nine to ten years was reversed on one count but the time he had already served on that count was credited to his two-year sentence on another, consecutive count. *Id.* After petitioner was reconvicted on the first count, he was not given "double credit" toward the sentence on the first count even though that was the conviction under which he was actually serving time before the reversal. *Id.* at 1007-08. The court rejected petitioner's double jeopardy argument, stating that "since all of the time originally served by Thacker was credited against his two-year sentence, nothing remains to be applied against the sentence [on the first count]." *Id.* at 1007.

Neither of these examples are 100 percent on point with the present case. But just as these cases can be distinguished from petitioner's, the facts of petitioner's case can be distinguished from *Pearce* and *Lange*. I cannot say that *Pearce* or *Lange* so obviously applies to petitioner's situation that no fairminded jurist could come to the conclusion reached by the Wisconsin Supreme Court. *See Woodall*, 134 S. Ct. at 1706 ("'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004))). Therefore I must deny his petition.

**C. Certificate of appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Because I conclude that the issues petitioner presents deserve encouragement to proceed further, I will grant petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Charles Lamar's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is GRANTED.

Entered September 28, 2015.

       BY THE COURT:

       /s/

       _____

       JAMES D. PETERSON
       District Judge